**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | } | |
| | } | |
| **v.** | } | **Crim. No. SA:11-CR-627(1) OLG** |
| | } | |
| **MARIA DE LA LUZ PEREZ,** | } | |
| **Defendant.** | } | |

**REPORT AND RECOMMENDATION ON MOTION TO SUPPRESS**

To:    Hon. Orlando Garcia
         United States District Judge

The matter before the Court is defendant's motion to suppress, her brief in support of the motion, and the government's response thereto (docket entries 42 and 43).  The matter was referred to me for report and recommendation (docket entry 44).

**Procedural History**

Defendant was arrested on July 18, 2011 with three pounds of cocaine in the form of two separate packages found in her purse.  Her arrest was preceded by a traffic stop of the vehicle she had been driving for speeding (78 in a 70 mph zone) and eventual consent search of her purse. The passenger of her car was also arrested with one package of cocaine weighing 2.45 pounds. Both were charged with possession with intent to distribute a controlled substance by complaint and later indicted.

Defendant filed the motion now before the court arguing that the items were seized without a warrant, and specifically that the traffic stop and detention were unreasonably prolonged and therefore tainted defendant's subsequent consent to search her purse.  The government responded that the traffic stop and subsequent detention were supported by reasonable suspicion and that there is no evidence that the consent was other than voluntary.

1

The following proposed factual findings are based on the evidence presented at a hearing on the motion.[1]

**Proposed Findings of Fact**

1.    SAPD received information from a reliable source who had provided information in the past – although not used previously to make a case or to support a warrant request – that a 2008 Dodge Caliber, license Texas CV5B282, would be traveling north on I-35 through San Antonio between 2-6 pm on July 18, 2011, carrying a large amount of cocaine and two older women or an older man and woman.

2.    Detective Chad Culp observed the vehicle driven by defendant south of Loop 1604 on I-35, traveling north, about 4:00 pm on July 18, 2011.  He followed the car, verified the license plate number, and make and model of the car.  He observed two women in the car.  The description of the car, its occupants and its plates matched the information provided by the informant.  Culp then contacted SAPD officer Harry Clark who was in the area.  Records check of the license plate on the vehicle which was registered in Eagle Pass, Texas, revealed that the vehicle had crossed into or out of Mexico 10 times in the past two months.

3.    Officer Clark paced the vehicle with his patrol car, observed it traveling 78 in a 70 mph zone, and stopped the vehicle at 4:02 pm in the proximity of Loop 410 and I-35. (Def.

---

[1]One exhibit, defendant's exhibit one, was admitted at the hearing.  The exhibit contains a compilation of police records concerning the defendant's arrest, including officer reports, records of the speeds of Officer Clark's patrol car and location of his patrol car during the afternoon hours of the date in question, and records of email type communication generated by or received by his patrol car.  I include references to particular pages of that exhibit which I have relied on in these proposed findings of fact.

Exh. 1, page 21). Clark asked the occupants for their license and insurance and discovered that while the passenger spoke some English, the occupants were primarily Spanish speakers. Clark was unable to communicate directly with the driver of the vehicle to verify the information being provided by the passenger.

4. Clark was able to see into the rear of the vehicle (a station-wagon/hatch back type car) and observed no luggage or bags in the vehicle except that each occupant had a purse.

5. Because the occupants of the vehicle were primarily Spanish speakers and were both women, Officer Clark called for additional officers.

6. Clark was able to communicate sufficiently with the passenger to obtain licenses for both occupants and insurance documents, learn that they were traveling to Seguin, and that the vehicle was owned by defendant's husband. While waiting for the back-up officers, neither occupant was free to leave the scene.

7. The additional officers, Officer Serratos who spoke Spanish, and Officer Bennett, a female officer, arrived together about 4:30 pm. (*Id*. at page 9).

8. About 4:32 pm Clark's patrol unit self-initiated an incident, which was assigned a number and location. The nature of the incident was identified as "traffic related." (*Id*. at pages 34 & 38).

9. Officer Serratos, a Spanish speaker, spoke to defendant who was the driver of the vehicle, asked who the car belonged to (her husband) and then asked for consent to search the car. The defendant consented to the search of the vehicle, and both defendant and her passenger exited the car holding their purses. (*Id*. at page 9).

10. Clark and Bennett searched the car. No contraband was found. The search took about

ten minutes.

11. Clark requested a narcotics detecting canine to assist in the search. The dog showed "interest" in the passenger compartment but did not "alert" to a particular place in the vehicle.

12. Serratos advised defendant and her passenger that the car would be transported to a police facility for further examination. The defendant and her passenger became nervous, and Serratos asked both for consent to search their purses. They consented.

13. Defendant's purse contained two packages wrapped in black tape with a total of 3 pounds of cocaine. The passenger's purse contained one package, similarly wrapped with 2.45 pounds of cocaine. (*Id*. at page 8). Defendant and her passenger were arrested and handcuffed.

14. Clark estimated that the amount of time from the time the vehicle was stopped till defendant was handcuffed to be 45-60 minutes.

15. Defendant and the passenger were transported to a police facility at 214 W. Nueva after a tow truck arrived to take the vehicle to a police facility to conduct a further search. No other contraband was located in the vehicle.

## Proposed Conclusions of law

The parties' motion, brief in support and response correctly summarize the applicable law: The applicable law is not in dispute. What is disputed in this case is the application of the well-known Fourth Amendment principles recited in these authorities to the facts in this case.

The defendant presented the Court with additional authorities[2] which have been reviewed in the preparation of this recommendation. The following recommendations are based on the well established and undisputed principles of law which are found in the parties' briefing, the additional authorities cited by the defendant, and my review of the testimony and documentary evidence submitted at the hearing.

1.  The officers had reasonable, articulable suspicion that the occupants of the vehicle were involved in criminal activity, justifying the stop of the vehicle and subsequent investigation.  This included the detailed information provided by the informant; the reliability of the informant in having provided information to law enforcement in the past that was independently corroborated; the observation of the defendant's car, which exceeded the posted speed limit, to be in conformity with the description of same provided by the informant, including the make/model of the vehicle, license plate, direction and time of travel, and description of the occupants of the car; and determination of ten crossings of the vehicle into or out of Mexico in the past two months.

2.  After the defendant was stopped for speeding, the officers' questions and defendant's detention were brief and reasonably related in scope to the circumstances that justified the stop. The totality of the circumstances which justify the detention and investigation

---

[2]The additional authorities presented by defendant during closing argument at the hearing on the motion to suppress are as follows: *U.S. v. Macias*, 658 F.3d 509 (5th Cir. 2011) (unconstitutional detention tainted subsequent consent to search); *U.S. v. Rivas*, 157 F.3d 364 (5th Cir. 1998) (drug canine's "casting" is not equivalent to dog's "alert" so as to create probable cause for a search as a matter of law);  *U.S. v. Guzman*, 75 F.3d 1090 (5th Cir. 1996) (drug canine's "interest" in defendant's bag was one factor in determining whether totality of circumstances established probable cause to seize defendant).

include the following:

- the vehicle and its occupants matched the descriptions provided by the informant;

- the vehicle had made ten crossings into or out of Mexico in the previous two months;

- the occupants were initially asked for only basic information, including identification related documents, insurance, ownership of the vehicle and destination, which only one of the occupants could communicate;

- because only the occupant who had limited English proficiency could respond to the officer's questions and because the officer was unable to communicate independently with the driver of the vehicle who did not speak English and verify the responses of the passenger, it was necessary to request a Spanish speaking officer assist;

- the officer observed no luggage or bags in the vehicle other than the driver and passenger's purses;

- defendant agreed to the search of the car and exited carrying their purses;

- a canine "showed interest" in the passenger compartment of the car;

- defendant and her passenger were observed to be nervous as the investigation progressed;

- defendant and her passenger consented to the search of their purses; and

- a mere 45-60 minutes elapsed from the time the defendant was stopped to the time the cocaine was found and defendant was arrested.

3.    The preponderance of the evidence supports the conclusion that defendant's consent to the search of her car and her purse were voluntary and were freely given.  There is no evidence that the questioning of the defendant or her passenger was in any way coercive. The questioning and request for permission to search were conducted in Spanish.  There

is no evidence that defendant ever withdrew her consent or objected to the search once having given her consent. There is no evidence that she did not understand what she was asked to consent to. The detention, which preceded her consent, was not excessive in duration or otherwise unreasonable so as to taint the consent and subsequent search in any way.

**Recommendation**:

For the foregoing reasons, I recommend that the motion to suppress be DENIED.

**Instructions for Service and Notice of Right to Object/Appeal**

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed within 14 days after being served with a copy of same, unless this time period is modified by the district court.[3] Such party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the

---

[3] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

district court.[4]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this memorandum and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[5]

**SIGNED** on December 8, 2011.

*Nancy Stein Nowak*

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[4] *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

[5] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).